

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2003

# Lemaire v. Hartford Life

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2533

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Lemaire v. Hartford Life" (2003). *2003 Decisions.* Paper 427.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/427

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Case No:  02-2533
_____

DONALD LEMAIRE

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,

Appellant

_____

On Appeal From the United States District Court
For the Middle District of Pennsylvania
District Judge:  Honorable Malcolm Muir
(D.C. No. 01-CV-932)


_____


Submitted Under Third Circuit LAR 34.1(a)
April 3, 2003
_____

Before: MCKEE, SMITH, *Circuit Judges*, and HOCHBERG,
*District Judge*[*].

(Filed: June 30, 2003)
_____

OPINION OF THE COURT
_____

---

[*] Hon. Faith S. Hochberg, United States District Court for the District of New Jersey, sitting by designation.

1

Brian P. Downey, Esq. (Argued)
Pepper Hamilton
200 One Keystone Plaza
North Front & Market Streets
P.O. Box 1181
Harrisburg, PA 17108

Bernard F. Cantora, Esq. (Argued)
Bryant & Cantora
1901 East College Avenue
State College, PA 16801

HOCHBERG, *District Judge*

## I.  FACTS AND PROCEDURAL POSTURE

Hartford Life and Accident Insurance Co. ("Hartford") denied Donald Lemaire's ("Lemaire") application for long term physical disability ("LTD") benefits based upon his asserted physical disability, and granted him only the limited benefits provided for mental disability.  The District Court granted summary judgment in favor of Lemaire, finding that Hartford's denial of LTD benefits was arbitrary and capricious under ERISA.  Hartford thereupon filed the instant appeal.

Until early 1998, Donald Lemaire was employed at the Meadows Psychiatric Center as a substance abuse counselor.  Lemaire was diagnosed with Hepatitis C sometime during the 1980's.  In 1997, Lemaire underwent 6 months of Alpha Interferon Therapy in the hope of treating his Hepatitis C illness.  He had an intensive depressive reaction to the course of interferon therapy, which rendered him unable to work.  After interferon therapy was discontinued, Lemaire had significant difficulties with fatigue and diffuse musculoskeletal

2

pain; his physician described this pain pattern as suggestive of fibromyalgia-type syndrome. By October 1998, Lemaire's condition had deteriorated to the point where his physician had no hope of his recovery or return to work at his job at the Meadows Psychiatric Center. Lemaire applied for disability benefits through Hartford.

Two different claims examiners reviewed Lemaire's claim. One of the examiners believed that the claim would be approved based on his physical ailments; the other concluded that there was no medical documentation to support a finding of total physical disability, but noted that there was a consensus among his treating physicians that Lemaire was depressed. Hartford approved Lemaire's claim solely for mental disability , which carries far more limited benefits than those awarded for physical disability.

On December 7, 1998, Hartford began making disability payments to Lemaire, but the insurer did not inform Lemaire that his claim had been approved only for mental disability benefits. Lemaire did not become aware of his "mental/nervous" classification by Hartford until June 1999. In December 1999, Lemaire's treating psychiatrist, Dr. Hylbert, wrote to Hartford to certify Lemaire's continuing disability, stating that Lemaire's primary diagnoses were major depression, recurrent and Hepatitis C. Dr. Mooney, Lemaire's treating physician ,also wrote to the insurer to refute Hartford's classification of Lemaire's primary diagnosis as depression rather than Hepatitis C.

Hartford's claims examiner reviewed Dr. Mooney's report and concluded that there was insufficient "objective" data to support the conclusion that Lemaire was physically unable to perform his occupation. While Dr. Mooney reported several disabling physical

3

conditions, Hartford needed "verifiable testing" to support a claim of physical disability. On June 6, 2000, the same examiner reviewed updated medical records received from Lemaire's doctors which included Functional Capacity Evaluations completed by both physicians. She then felt unable to determine whether the diagnosis should be Hepatitis C, Chronic Fatigue Syndrome or depression.

Hartford asked Dr. Mooney to supply "verifiable objective documentation" of Hepatitis C, Chronic Fatigue Syndrome and Inflammatory Arthropathy diagnoses. Dr. Mooney forwarded a report with documented proof of Hepatitis C and further explained that Chronic Fatigue Syndrome is a syndrome notable for the absence of "objective" data.

Upon review of Dr. Mooney's letter, the claims examiner concluded that the file should be sent out for an independent medical review prior to any final determination. However, after a second discussion with her supervisor, her decision was changed and no independent review was sought by Hartford. Instead, Hartford chose to have its own medical director review the claim. Hartford's medical director reviewed Lemaire's file and spoke with Dr. Mooney. No attempt was made to contact Dr. Hylbert. Nonetheless, the medical director rejected Dr. Mooney's primary diagnosis of physical disability and determined that Lemaire's primary disabling diagnosis was depression, relying on Dr. Hylbert's notes for this conclusion.[1] He found the diagnosis of Chronic Fatigue

---

[1] A nurse employed by Hartford's medical director found that Lemaire presented overlapping symptoms and diagnoses, including symptoms of depression, which is a component of Chronic Fatigue Syndrome, and chronic Hepatitis C, for which the interferon treatment also causes fatigue and depression. Finding it difficult to assess whether the primary diagnosis was depression or Chronic Fatigue Syndrome, she reviewed Dr. Hylbert's notes and, based on his records, concluded that the main diagnosis was depression. No attempt was made by Hartford to contact Dr. Hylbert to verify the

unsubstantiated. The medical director did not seek to have Lemaire examined, but concluded that he could perform a sedentary occupation.

On August 24, 2000, Lemaire formally objected to his classification as mentally disabled because his depression was secondary to, and caused by, Hepatitis C and Chronic Fatigue and Chronic Pain Syndrome. On October 30, 2000, Hartford notified Lemaire of its decision to limit his benefits to 24 months based on a primary diagnosis of depression, and gave Lemaire 60 days to submit additional information. However, a mere nine days later, and without any new medical information, Hartford issued a final denial of Lemaire's claim for physical disability coverage on the ground that the primary diagnosis was depression and that the claimant could do sedentary work. Hartford declined all further review of the file.

Lemaire then commenced the instant action, alleging that Hartford had violated his rights under ERISA. The District Court granted Lemaire's motion for summary judgment and entered judgment in his favor in the amount of $16, 172.64, plus attorney's fees. Hartford has timely appealed.

## II. JURISDICTION

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 because the complaint sought benefits under 29 U.S.C. § 1332(a)(1)(B). This Court has jurisdiction over the final decision of the District Court pursuant to 28 U.S.C. § 1291.

## III. THE DISTRICT COURT'S RULING

primary diagnosis.

5

The District Court applied a "heightened" arbitrary and capricious standard of review of Hartford's decision and found that Hartford's decision to limit Lemaire's disability benefits to the 24 months provided by the plan for mental illness disability was arbitrary and capricious. In so finding, the District Court determined that "the administrative record did not support Hartford's conclusion that depression was Lemaire's primary disabling condition" and that, in fact, "the record compels the conclusion that Lemaire's depression was a secondary condition caused by his physical ailments."

## IV. STANDARD OF REVIEW

We exercise plenary review over a district court's grant of summary judgment and therefore apply the same legal standards applied by the district court in the first instance. *Corson v. Bert Bell NFL Player Retirement Plan*, 214 F.3d 136, 142 (3d Cir. 2000). Because summary judgment was granted in Lemaire's favor, we review the record in the light most favorable to Hartford. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is proper if, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2]

---

[2] Pursuant to Rule 56(c), a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Indiana Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. See Peters v.

6

V. LEGAL ANALYSIS

Hartford raises three issues on appeal: (1) the District Court improperly subjected the administrator's decision to the heightened arbitrary and capricious standard of review rather than the ordinary arbitrary and capricious standard; (2) even if the correct legal standard was applied, the District Court wrongly determined that depression was not Lemaire's primary disabling condition; and (3) the District Court abused its discretion in awarding attorney's fees.

A. "Arbitrary and Capricious" vs. "Heightened Arbitrary and Capricious"

When the plan grants an administrator discretionary authority to construe the terms of the plan or to determine eligibility for benefits, courts ordinarily may reverse the denial of benefits only if the administrator's decision was "arbitrary and capricious." *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 115 (1989). This standard of review applies whether the administrator's decision was based on the interpretation of the plan or on factual determinations. *Mitchell v. Eastman Kodak, Co.*, 113 F.3d 433, 438 (3d Cir. 1997).

However, in *Pinto v. Reliance Std. Life Ins., Co.*, 214 F.3d 377, 379 (3d Cir. 2000), we set forth a "sliding scale method, intensifying the degree of scrutiny to match the degree

---

Delaware River Port Auth. of Pa. and N.J., 16 F.3d 1346, 1349 (3d Cir. 1994).

Substantive law controls the inquiry into which facts are "material." Anderson, 477 U.S. at 248. An issue is "genuine" if a reasonable jury could decide the issue in the nonmovant's favor. Id. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.; accord Ridgewood Bd. of Educ. v. M.E., 172 F.3d 238, 252 (3d Cir. 1999) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)).

of conflict [of interest]." *Id.* at 379. Therefore, when an insurance company both determines eligibility for benefits and pays benefits out of its own funds, a court reviews the denial of benefits under "heightened arbitrary and capricious" review. *Pinto*, 214 F.3d at 378. Under *Pinto*, a conflict of interest is presumed where an insurance company both determines eligibility for benefits and pays out those benefits from its own funds, because there exists "an active incentive to deny close claims in order to keep costs down and keep themselves competitive so that companies will choose to use them as their insurers." *Id.* at 388. Such potential self dealing warrants that the insurer's decision be closely inspected. *Id.* at 387-88. When applying a heightened arbitrary and capricious review, a court is deferential, but not absolutely deferential. *Id.* The greater the evidence of conflict on the part of the administrator, the less deferential the review. *Id.* A court must look not only at whether the result is supported by reason, but also at the process by which the result was achieved.

In the instant case, Hartford contends that the record is devoid of evidence to support the District Court's application of the heightened arbitrary and capricious standard of review. Hartford argues that the District Court, in applying the sliding scale approach under *Pinto* to determine the degree of scrutiny to be applied, failed to consider such factors as the sophistication of the parties, the information accessible to the parties and the exact financial arrangement between the insurer and the company.

The District Court decided to apply the heightened arbitrary and capricious standard of review because Hartford acted as both the insurer and administrator of Lemaire's LTD

benefits and because of the "procedural irregularities in the manner in which Hartford made its decision." The trial court was most troubled by Hartford's decision to affirm the denial of benefits on Lemaire's appeal on November 9, 2000, a mere nine days after informing Lemaire that he had 60 days to submit additional medical documentation. The District Court rejected Hartford's argument that the 60-day period had actually started to run on August 24, 2000, finding this explanation "totally devoid of merit." The District Court also noted Hartford's "self-serving" paper review of Lemaire's medical file[3] and Hartford's failure to follow the notification provisions regarding denial of benefits in the insurance policy and ERISA when it partially denied Lemaire's request for benefits in December 1998 without so informing him.

We find that the District Court appropriately applied the *Pinto* factors to the evidence in the instant case in finding that there was a conflict of interest. Therefore, the District Court properly applied the heightened arbitrary and capricious standard of review.

B.  Application of the Standard to the Facts

Hartford argues that the District Court erred by substituting its own judgment for that of the administrator in characterizing the evidence of Lemaire's primary diagnosis as a physical disability. Hartford contends that it gave the appropriate deference to, and accepted the diagnoses of, Lemaire's treating physicians. To the extent that there were

---

[3] In particular, the court pointed to Hartford's characterization of the evidence relating to Lemaire's depression as "objective" while depicting the evidence regarding his physical disability as not "objective" even though the evidence was no different in quantity or quality.

9

conflicts among those diagnoses, Hartford argues that it was within its discretion to resolve them.

Lemaire responds that Hartford relied upon the opinion of an in-house medical doctor, who "cherry picked" among the notes of Lemaire's treating physicians to substantiate the desired decision to limit benefits to those for mental disability, while ignoring medical information supportive of Lemaire's claim to the greater benefits accorded for physical disability. He further points to Hartford's abrupt cut-off of its consideration of additional medical evidence as proof that Hartford's conflict of interest drove its decision-making.

Applying a heightened arbitrary and capricious review, we are deferential, but not absolutely deferential. The District Court's grant of summary judgment in favor of Lemaire rested upon its finding that Hartford's determination that the evidence of depression was "objective" and that the evidence of physical disability was "not objective" lacked both logic and support in the record. To require "objective" medical evidence to establish the etiology of chronic fatigue syndrome, which is defined by the absence of objective medical evidence, *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 442-43 (3d Cir. 1997), creates an impossible hurdle for claimants and is arbitrary and capricious under the heightened standard we apply in this case. Accordingly, we will affirm the District Court's decision to reverse Hartford's denial of LTD benefits.

C. Attorney's Fees

10

Under ERISA, 29 U.S.C. § 1132(g)(1), the court, in its discretion, may award attorney's fees to a prevailing party.  There is no presumption that a successful plaintiff should automatically receive attorney's fees.  *Ellison v. Shenango, Inc. Pension Bd.*, 956 F.2d 1268, 1273 (3d Cir. 1992); *McPherson v. Employees' Pension Plan of American Re-Insurance Company, Inc.*, 33 F.3d 253, 254 (3d Cir. 1994).  In determining whether to award attorney's fees under section 502(g)(1), a district court must consider the following five factors:  (1) the non-prevailing party's bad faith or culpability; (2) the ability of the non-prevailing party to satisfy an attorney's fee award; (3) the deterrent effect of an attorney's fee award on the non-prevailing party; (4) the benefit conferred on the members of the pension plan as a whole; and (5) the relative merits of the parties' positions.  *Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983).  Our review of the District Court's award of attorney's fees is to determine if there was an abuse of discretion.

Hartford contends, *inter alia*, that the District Court abused its discretion in awarding counsel fees because Lemaire did not meet all five factors of the *Ursic* test. Specifically, Hartford argues that there was no evidence of bad faith or culpability, and, thus, no behavior to deter.  In addition, Hartford contends that the fifth factor of the *Ursic* test has not been met solely because Lemaire was the prevailing party.

---

4  Hartford does not dispute the amount of the attorney's fees and therefore, that issue has not been addressed.

In its order awarding attorney's fees to Lemaire, the District Court substantially applied the *Ursic* test, and we find no abuse of discretion in the District Court's award of attorney's fees in this case.

## VI.  CONCLUSION

The District Court's decision will be affirmed.

TO THE CLERK:

Please file the foregoing Opinion.

/s/ Faith S. Hochberg
District Judge
